MACK HAMMONDS V. THE STATE.

No. 4537.   Decided October 24, 1917.

**1.—Murder—Charge of Court—Self-defense—Intent to Kill.**

The accused does not forfeit his right of self-defense by simply having an intent to kill or to do serious bodily injury; there must be some act done or words spoken indicating his purpose, and in addition he must execute that purpose or provoke the other party to do something that he may execute it, and it is not every act done by the accused which forfeits his right of self-defense. And a charge of the court failing to apply this law to the facts upon trial of murder is reversible error. Prendergast, Judge, dissenting.

**2.—Same—Provoking Difficulty—Charge of Court—Imperfect Self-defense.**

If the act done or words spoken is to provoke the difficulty with the ulterior view of killing or inflicting serious bodily injury and the defendant does the act or utters the provoking words the killing might be murder, but if the purpose be less than that of killing, etc., the law of imperfect self-defense would

arise and the charge of the court should so apply the law. Prendergast, Judge, dissenting.

**3.—Same—Provoking Difficulty—Charge of Court—Converse Proposition.**

Upon trial of murder the evidence suggested provoking the difficulty, the court having charged thereon, the converse of the proposition, that if the purpose of defendant was less than to kill or inflict serious bodily injury, then imperfect self-defense would be in the case, and an appropriate charge should have been submitted presenting that theory as suggested by the testimony. Prendergast, Judge, dissenting.

**4.—Same—Declarations of Deceased—Evidence—Res Gestae.**

Where, upon trial of murder, the declarations of deceased were admitted in evidence, and the matter was so close in time to the transaction as to bring it within the rule of res gestae, there was no reversible error.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of murder; penalty, nine years imprisonment in the penitentiary.

The opinion states the case.

*N. L. Dalley and Joe Hughes*, for appellant.—On question of court's charge: Airhart v. State, 40 Texas Crim. Rep., 470; Matthews v. State, 42 id., 31; Pratt v. State, 50 id., 227; Frank v. State, 47 id., 648; Tardy v. State, 46 id., 214; Sorrell v. State, 169 S. W. Rep., 299.

On question of converse proposition: Craiger v. State, 48 Texas Crim. Rep., 505; Garza v. State, 48 id., 384; Gaines v. State, 127 S. W. Rep., 187.

On question of court's failing to charge on manslaughter: Reed v. State, 11 Texas Crim. App., 509; Nicks v. State, 46 Texas Crim. Rep., 241; Sorrell v. State, 169 S. W. Rep., 299.

*E. B. Hendricks*, Assistant Attorney General, for the State.—On question of manslaughter: Cole v. State, 35 Texas Crim. Rep., 385; Wheeler v. State, 58 id., 297; Wood v. State, 150 S. W. Rep., 780.

DAVIDSON, Presiding Judge.—The former appeal is reported in 177 S. W. Rep., 493. It is deemed unnecessary to make a statement of the facts in the disposition of this appeal. While the evidence is not altogether as shown by the previous appeal, yet such evidence may be treated as being substantially the same.

The court charged the jury that, if they should find from the evidence that defendant and Joe Hokes armed themselves and pursued deceased with the intention of taking his life, or inflicting upon him serious bodily injury, he could not justify on the ground of self-defense. Exceptions were reserved to this charge; they are correct. It takes more than is stated by the court in the charge to forfeit the right of self-defense. Appellant and Hokes may have done as stated in the charge, and had the intent and purpose to kill, or inflict serious bodily

injury, yet without some act done by them, or words spoken, or both by such words and acts, they provoked deceased into a difficulty, or give evidence by word or act of carrying out their purpose, self-defense would still remain. An accused party does not forfeit his right of self-defense by simply having an intent to kill, or to do serious bodily injury. There must be some act done or word spoken indicating his purpose, and in addition he must execute that purpose, or provoke the other party to do something that he may execute it. It is not every act done by an accused which forfeits his right of self-defense. If the act done, or word spoken, is to provoke the difficulty with the ulterior view of killing, or inflicting serious bodily injury, and he does the act, or utters the provoking words, the killing might be murder. If for a less purpose than to kill or inflict serious bodily injury, the law of imperfect self-defense would arise, and the culpability under such circumtsances would be of less magnitude than murder. It is, therefore, necessary, as a prerequisite to forfeiting the right of self-defense, that the accused must do or say something as to his purpose which would and does bring on the difficulty. The charge is erroneous from any viewpoint.

The court also charged the jury that, if they should believe that defendant sought the meeting with deceased for the purpose of slaying him, or inflicting upon him serious bodily injury, and, having found him, did some act or used some language, or did both, with intent to produce the occasion to bring on the difficulty, and that the same, under the circumstances, was or were reasonably calculated to provoke a difficulty, and on such account deceased attacked the defendant, or Joe Hokes, or both of them, and the defendant, or Joe Hokes, while acting together at that time as principals, as heretofore defined in the charge, shot and killed deceased in pursuance of their original design, then defendant can not justify on the ground of self-defense, for such killing would be murder. Various exceptions were urged, and special charges requested and refused. These were timely presented. This charge falls short of the law, and did not submit the converse of the proposition announced by the court, towit: If appellant and Hokes followed deceased, not for the purpose of killing him but inflicting upon him injury less than such as would cause murder, then the question of imperfect self-defense arose, and the killing might be less than murder. It would present the question of manslaughter. Having charged on the doctrine of provoking a difficulty, with the ulterior purpose of killing, or inflicting serious bodily injury, the converse of the proposition, that if the purpose was less than to kill or inflict serious bodily injury, then imperfect self-defense would be in the case, and an appropriate charge should have been given presenting that theory. The question is suggested by the testimony, and should have been covered by the charge. The theory of appellant and Hokes was, they followed deceased for a peaceable settlement, and they tried to prevent a difficulty by calling to him not to do anything wrong or rash, that they wanted a peaceable settlement. If the jury believed that, and the deceased then fired, and

appellant returned the fire, the question of self-defense would be raised from that standpoint, that is, the question of perfect self-defense. These propositions were in the case, and should have been given in the charge.

There is another question suggested for decision, that is, the alleged error admitting statements of deceased on the theory they were res gestae. We deem it unnecessary to set out the statement; it is lengthy. After reviewing it, we are of opinion that the matter was sufficiently connected with the tragedy, and so close in time to the transaction as to bring it within the rule of res gestae. It was but a few moments after the shooting, and the witness testifying to the statement of deceased said when he heard the shooting he started in that direction. The shooting occurred about 300 yards from where he was located. He met the deceased running toward him from the scene of the shooting with a pistol in his hand. He took him to his house nearby, laid him on the bed, and took his pistol. Deceased was badly shot. Under these circumstances he made this statement. We are of opinion that the testimony is within the rules of res gestae and admissible.

For the reasons set out with reference to the errors in the charge of the court, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—Prior to Sunday, April 5, 1914, which was the day appellant and Joe Hokes murdered Pearl Stroud, deceased, there had been more or less trouble between them, Hammonds and Hokes, and Stroud. A state of hostility existed between them. Hammonds and Hokes on one side and Stroud on the other. On the evening of said date deceased, Stroud, went to his neighbor's, Dump Hicks, to borrow a plow to use the next day. It turned out that Hammonds and Hokes were at Hicks' at the time. He called Hicks off away from Hammonds and Hokes and other neighbors who were there at the time, and made arrangements to borrow a plow from him. He then started to leave and Hammonds and Hokes started towards him, hailing him and telling him to hold on a minute that they wanted to see him. Stroud did not halt but started off from them in a gallop. Hammonds then hollered to him, "Run, you coward!" or "Run, you cowardly son-of-a-bitch." Stroud continued to get away from them. Hammonds then said to Hokes that if he had a horse he would overtake Stroud. Hokes told him he had a horse and buggy near and he would go and get it, which he did. Hammonds then got in the buggy with him, each armed with a sixshooter and they took out after Stroud. Stroud was riding a little young horse and did everything he could to run away from Hammonds and Hokes, who pursued him. He ran a mile. His little horse gave out. When Hammonds and Hokes got near enough to him each went to shooting at him and killed him—murdered him. Stroud had done everything he could to save his life and keep Hammonds and Hokes from killing him. He had run a mile; had run his horse down. And even if before Ham-

monds and Hokes shot at him at all on this occasion he had the right, in his own self-defense, to save himself from being murdered by them, to shoot at one or both of them, and if he had killed one or both of them no grand jury would ever have indicted him, and if any grand jury ever had, no court would have sustained a conviction against him. For everything he did in the way of shooting at them was unquestionably in his own self-defense.

The court's charge in this case, taken as a whole, substantially correctly submitted the issue of provoking a difficulty and Hammonds' claimed self-defense. Really, he had no self-defense.

The evidence in no way raises the issue of manslaughter, as was correctly held in the decision of this case on first appeal, 177 S. W. Rep., 493, by the unanimous decision of this court. The court was correct in refusing to submit manslaughter on the supposed theory that Hammonds and Hokes ran him this mile with their sixshooters to see and talk to him and reconcile their supposed differences. What an absurdity!! Run a man with sixshooters more than a mile when he was doing everything possible to save his life from being taken by them, and then pretend that they were running him down to have an amicable adjustment between them.

This case should have been affirmed and not reversed.

What I have said in this case applies even with greater force to the Hokes case, decided the same day.